**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000427
18-MAR-2019
07:52 AM**

NO. CAAP-16-0000427

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee/Cross-Appellant,
v.
STEVE WESTERMAN, Defendant-Appellant/Cross-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CR. NO. 12-1-0441)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and Chan, JJ.)

Defendant-Appellant/Cross-Appellee Steven Westerman (**Westerman**) appeals from a "Judgment Guilty Conviction and Sentence" (**Judgment**) filed on May 3, 2016 by the Circuit Court of the Fifth Circuit (**Circuit Court**).[1] Westerman was convicted of five counts of Sexual Assault in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-730(1)(b) (1993).[2]

---

[1] The Honorable Randal G.B. Valenciano presided.

[2] HRS § 707-730(1)(b) provides:

> §707-730 **Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:
>
> . . .
>
> (b) The person knowingly subjects to sexual penetration another person who is less than fourteen years old; provided this paragraph
>
> (continued...)

Plaintiff-Appellee/Cross-Appellant State of Hawai'i (**State**) cross-appeals.[3]

On appeal, Westerman argues that the Circuit Court erred in denying: (1) "Defendant's Motion to Dismiss Based on the Double Jeopardy Clause of the Hawaii State Constitution"; (2) Westerman the opportunity to fully re-cross-examine the State's expert witness, Dr. Dianne Gerard (**Dr. Gerard**), during the second trial; (3) Westerman's "Motion to Dismiss for Violation of Defendant's Due Process Rights" regarding pre-indictment delay; and (4) Westerman's "Motion for New Trial", predicated on alleged ineffective assistance of trial counsel.

On cross-appeal, the State asserts that: (1) the Circuit Court abused its discretion by declaring a mistrial in the first trial due to the following question posed to the defense's expert, Dr. Marvin Acklin, Jr. (**Dr. Acklin**), by the Deputy Prosecuting Attorney (**DPA**): "Dr. Acklin, isn't it true that your own son is currently charged with sexually assaulting a child?"; (2) even assuming the question asked by the DPA was prohibited under Hawai'i Rules of Evidence (**HRE**) Rule 403,[4] the

---

(...continued)

> shall not be construed to prohibit practitioners licensed under chapter 453, 455, or 460, from performing any act within their respective practices.

[3] The State cross-appeals pursuant to HRS § 641-13(5) (2016), which provides:

> **§641-13 By State in criminal cases.** An appeal may be taken by and on behalf of the State from the district or circuit courts to the intermediate appellate court, subject to chapter 602, in all criminal matters, in the following instances:
>
> . . .
>
> (5) From a ruling on a question of law adverse to the State, where the defendant was convicted and appeals from the judgment[.]

[4] HRE Rule 403 provides:

> **Rule 403 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant,
> (continued...)

2

Circuit Court abused its discretion because the question did not reference any prior bad acts of Westerman or his expert witness; and (3) the Circuit Court abused its discretion by finding that the DPA committed prosecutorial misconduct in this regard.

For the reasons stated below, we affirm Westerman's conviction and deem the State's cross-appeal moot.

## I.    Background

On October 25, 2012, Westerman was indicted by a grand jury for six counts of Sexual Assault in the First Degree (**Indictment**), in violation of HRS § 707-730(1)(b).  Each count was alleged to have occurred more than fifteen years prior to the Indictment, between June 15, 1995 and May 31, 1997.  The complaining witness initially reported the allegations to the Kaua'i Police Department (**KPD**) on May 30, 2005, roughly eight years after the last incident of alleged sexual assault, and more than seven years prior to the Indictment.

Westerman's first trial commenced on May 12, 2014.  At trial, the State called Dr. Gerard as its expert witness in the general dynamics of child sexual assault.

On May 16, 2014, after the State rested, the defense called Dr. Acklin as its first witness.  Dr. Acklin testified for the defense as an expert in forensic psychology, forensic interview, and psychological evidence.

At the outset of Dr. Acklin's cross-examination by the State, the DPA asked him: "Isn't it true that your own son is currently charged with sexually assaulting a child?"  Westerman immediately objected.  The court instructed both attorneys to approach the bench.  Westerman promptly moved for a mistrial, arguing that the DPA's question was inflammatory, and could not be cured with an instruction.  The DPA responded that the

(...continued)
> evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

question was proper because it did not accuse Dr. Acklin of engaging in any prior bad acts, and was therefore allowable pursuant to HRE Rule 609.1[5] in order to impeach Dr. Acklin's credibility with evidence of bias. The DPA specified: "[i]f [Dr. Acklin] can attack the methods and the testimony of general dynamics of sexual assault used by the State, it could potentially assist his own son in his own case. He has a personal motivation[.]"

The court took Westerman's Motion for Mistrial under advisement, instructed the attorneys to submit memorandums regarding the pending motion, and called a recess.

On May 19, 2014, the court granted Westerman's Motion for Mistrial. The court reasoned that the DPA denied the court an opportunity to analyze before trial whether this type of question was proper. The court opined that the fact that Dr. Acklin's son was currently charged with sexually assaulting a child -- just like Westerman -- was "marginally relevant[.]" Based on the foregoing, the court found that the DPA committed prosecutorial misconduct and ordered a retrial of Westerman rather than a dismissal of the charges.

On July 30, 2015, the Circuit Court issued its "Findings of Fact, Conclusions of Law and Order Granting Motion for Mistrial." The court set a new trial date of August 17, 2015.

On July 31, 2015, Westerman filed his "Motion to Dismiss Based on the Double Jeopardy Clause of the Hawaii State Constitution."

---

[5] HRE Rule 609.1 provides:

> **Rule 609.1 Evidence of bias, interest, or motive.**
> (a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.
> (b) Extrinsic evidence of bias, interest, or motive. Extrinsic evidence of a witness' bias, interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is afforded an opportunity to explain or deny the matter.

On August 20, 2015, the Circuit Court denied the Motion.

Westerman's second trial commenced on January 11, 2016. Four days later, on January 15, 2016, a unanimous jury found Westerman guilty of five counts of Sexual Assault in the First Degree, in violation of HRS § 707-730(1)(b).

On January 25, 2016, Westerman filed his "Motion for New Trial."

On March 11, 2016, the Circuit Court denied Westerman's Motion and entered its "Order Denying Defendant's Motion for New Trial."

On May 3, 2016, the Circuit Court issued its Judgment. Westerman was sentenced to twenty (20) years imprisonment for each count, concurrent.

On May 26, 2016, Westerman timely appealed.

On June 9, 2016, the State timely cross-appealed.

## II. Standard of Review

### A. Double jeopardy

"A motion to dismiss based on constitutional double jeopardy is reviewed *de novo* under the right/wrong standard." Whiting v. State, 88 Hawai'i 356, 358, 966 P.2d 1082, 1084 (1998).

### B. Restriction of re-cross examination

A court's ruling restricting re-cross-examination of a witness is reviewed for abuse of discretion. State v. Jackson, 81 Hawai'i 39, 47, 912 P.2d 71, 79 (1996). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant." Id. (citations and internal quotation marks omitted).

### C. Pre-indictment delay

A trial court's decision denying a defendant's motion to dismiss for pre-indictment delay is reviewed *de novo*. State v. Faufata, 101 Hawai'i 256, 265, 66 P.3d 785, 794 (App. 2003) (citing State v. Furutani, 76 Hawai'i 172, 873 P.2d 51 (1994)).

5

## III. Discussion

### A. Double jeopardy

Westerman first contends that the Circuit Court erred in denying "Defendant's Motion to Dismiss Based on the Double Jeopardy Clause of the Hawaii State Constitution." Westerman argues that the DPA's conduct during Westerman's first trial was egregious enough to invoke the double jeopardy clause of the Hawai'i State Constitution and bar reprosecution of Westerman.

"[T]he standard adopted for purposes of determining whether double jeopardy principles bar a retrial caused by prosecutorial misconduct requires a much higher standard than that used to determine whether a defendant is entitled to a new trial as a result of prosecutorial misconduct." State v. Rogan, 91 Hawai'i 405, 423 n.11, 948 P.2d 1231, 1249 n. 11 (1999). Double jeopardy principles bar reprosecution that is caused by prosecutorial misconduct only where there is a highly prejudicial error affecting a defendant's right to a fair trial, and are applied only in exceptional circumstances. Id. By contrast, prosecutorial misconduct will entitle the defendant to a new trial where there is a reasonable possibility that the error complained of might have contributed to the conviction. Id. at 412, 984 P.2d at 1238. Reprosecution is barred only "where, in the face of egregious prosecutorial misconduct, it cannot be said beyond a reasonable doubt that the defendant received a fair trial." Id. at 423, 984 P.2d at 1249 (emphasis added).

The Hawai'i Supreme Court in Rogan held that clearly inflammatory and impermissible conduct by a deputy prosecuting attorney amounted to egregious prosecutorial misconduct. Id. at 424, 984 P.2d at 1250. In Rogan, identification of the defendant was not at issue, yet the deputy prosecuting attorney stated during closing argument: "This is every mother's worst nightmare. Leave your daughter for an hour and a half, and you walk back in, and here's some black, military guy on top of your daughter." Id. at 412, 984 P.2d at 1238. The court held that the deputy prosecutor's statement that it is "every mother's nightmare to

6

find some black, military guy on top of your daughter" constituted an impermissible appeal to racial prejudice. Id. at 414-15, 984 P.2d at 1240-41. The court explained: "Given that such a comment would likely arouse a jury's possible predisposition against some particular segment of society as to stigmatize Rogan, the deputy prosecutor's comment constituted a particularly egregious form of prosecutorial misconduct." Id. at 424, 984 P.2d at 1250. The court continued:

> arguments that rely on racial, religious, ethnic, political, economic, or other prejudices of the jurors introduce into the trial elements of irrelevance, irrationality, and unfairness that cannot be tolerated. . . . [T]he deputy prosecutor's remark was so egregious, from an objective standpoint, that the inference is inescapable that the remark clearly denied Rogan his right to a fair trial. Accordingly, reprosecution of Rogan is barred by the double jeopardy clause of article I, section 10 of the Hawai'i Constitution.

Id. In Rogan, the deputy prosecuting attorney's racially charged comment appealed to the jury's emotions and bore no objectively legitimate purpose. Id. Moreover, the comment represented an implied invitation to the jury to put themselves in the complaining witness' position. Id. at 414, 984 P.2d at 1240.

State v. Bruce, 141 Hawai'i 397, 411 P.3d 300 (2017) is more analogous to the instant case. In Bruce, the Hawai'i Supreme Court distinguished remarks made by the prosecutor to those made by the deputy prosecutor in Rogan. Id. at 405-06, 411 P.3d at 308-09. The remarks in Bruce appeared during the prosecutor's rebuttal closing argument:

> The fact of the matter is that they treated her like she was property. . . . They didn't see her as any thing more than a piece of property to pass around, to mistreat, to humiliate, intimidate, beat, and force. That is how they viewed her, and that is how they treated her. But she's not a piece of property. I mean, she's somebody's daughter, she's somebody's friend, she's a mother, she's a woman, she is a person, and she deserves to be treated properly.

Id. at 401-02, 411 P.3d at 304-05 (brackets and ellipses omitted). The court held that Rogan was distinguishable because (1) "compared to the prosecutor's comments in Rogan, the comments here did not constitute an improper appeal to the jury's emotions

that bore no objectively legitimate purpose[,]" and; (2) "unlike the prosecutor's comments in Rogan, the prosecutor's remarks in the present case did not represent an implied invitation to the jury to put themselves in the [complaining witness'] position." Id. at 406, 411 P.3d at 309.

Similar to Bruce, but unlike in Rogan, the DPA's question to Dr. Acklin in the instant case did bear some objectively legitimate purpose -- to impeach Dr. Acklin's credibility with evidence of bias under HRE Rule 609.1. See id. As the DPA specified during discussions following Westerman's objection to her question, "[i]f [Dr. Acklin] can attack the methods and the testimony of general dynamics of sexual assault used by the State, it could potentially assist his son in his own case. He has a personal motivation[.]" Also like Bruce, but unlike Rogan, the DPA's question to Dr. Acklin did not represent an implied invitation to the jury to put themselves in the complaining witness' position. See id. Moreover, the DPA's question to Dr. Acklin did not constitute an improper appeal to "racial, religious, ethnic, political, economic, or other prejudices of the jurors[,]" nor did it "lack a legitimate bearing on some issue in the case[.]" Id. at 407, 411 P.3d at 310 (citing State v. Kiakona, 110 Hawai'i 450, 459, 134 P.3d 616, 625 (App. 2006) (holding that a prosecutor's reference to the complaining witnesses as "tourists" and "haoles" had a fundamental bearing on the central issue in the case or criminal intent to commit terroristic threatening, and was not improper)).

Accordingly, the DPA's question to Dr. Acklin did not rise to the level of egregiousness that precluded reprosecution under Rogan. Therefore, the Circuit Court did not err in denying "Defendant's Motion to Dismiss Based on the Double Jeopardy Clause of the Hawaii State Constitution."

**B. Restriction of re-cross-examination**

Westerman next contends that the Circuit Court abused its discretion by denying trial counsel the opportunity to question the State's expert witness, Dr. Gerard, during the

second trial about false reporting in studies pertaining to delayed reporting of sexual abuse.

The Hawai'i Supreme Court has held:

[t]he scope and extent of cross and recross-examination of a witness is within the sound discretion of the trial judge. Under this standard, we will not disturb the trial court's exercise of its discretion unless it is clearly abused. An abuse occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party-litigant.

Jackson, 81 Hawai'i at 47, 912 P.2d at 79 (internal quotation marks and citations omitted). A trial court properly exercises its discretion when it limits the scope of re-cross examination to matters newly raised on re-direct examination.[6] Id.

During Westerman's second trial, on re-direct examination, the State's expert witness testified about the studies she relied on in direct examination regarding the dynamics of child sexual assault. The prosecutor asked Dr. Gerard, "[d]o the studies follow a scientific methodology that you as an expert find sound?" Dr. Gerard testified that they did, and explained the scientific methodology, adding, "[a]nd what I'm saying is that most of the research that I've looked at, the research has proven through scientifically valid ways of conducting the research --". Defense counsel objected to Dr. Gerard's use of the term "scientifically valid" to describe the manner in which the research was done in the studies. The Circuit Court allowed the questioning to continue because it was

---

[6] HRE Rule 611 provides, in pertinent part:

**Rule 611 Mode and order of interrogation and presentation.** (a) Control by the Court. The court shall exercise reasonable control over the mode and order of interrogating witness and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) Scope of cross-examination. Cross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit injury into additional matters as if on direct examination.

within the scope of the cross-examination. Nevertheless, the court added, "Not much longer, [Prosecutor]."

On re-cross-examination, defense counsel asked Dr. Gerard whether any of the studies she relied on dealt with individuals who had made false reports of sexual abuse. Dr. Gerard answered "I don't know that that was parsed out in the variety of studies that I looked at." The prosecution objected that the question was beyond the scope of the re-direct examination. Defense counsel countered, that "it goes to the scientific theory. She talked about the scientific theory [on re-direct examination]." The Circuit Court sustained the objection because "[i]t's beyond the scope of redirect[,]" but did not strike Dr. Gerard's answer to the question. The court explained that it had restricted the scope of Dr. Gerard's re-direct examination to not allow Dr. Gerard to explain the basis for believing that the studies she relied on were scientifically valid. The Circuit Court, however, was mistaken. It had in fact allowed the questioning on re-direct examination.

Defense counsel was denied the opportunity to further ask how, if at all, false reporting impacted the scientific methodology in the studies relied on by Dr. Gerard. This denial, however, was harmless error. Dr. Gerard's answer to defense counsel's question - that she did not know if the studies she reviewed dealt with individuals who had made false reports of sexual abuse - was not stricken. Moreover, defense counsel continued to question Dr. Gerard, without objection, regarding the scientific methodology in the studies she relied on. He asked, "[a]nd in the case of these child sex assault retrospective [sic] and so forth, there isn't really a control group of people who haven't been sexually assaulted, correct?" Dr. Gerard responded, "[w]ell, in the group that is surveyed by self report, some of them say they were sexually abused, and some of them say they were not." Defense counsel also asked Dr. Gerard, without objection, about characteristics of the individuals in the studies, the definitions of "abuse" used by

10

the various studies, and the number of studies in the field (to contrast the number of studies relied on by Dr. Gerard). Therefore, the Circuit Court's restriction of re-cross-examination regarding the question of false reporting did not prejudice Westerman. Thus, we reject Westerman's second point of error.

### C.    Pre-indictment delay

Westerman contends in his third point of error that the Circuit Court erred in denying his "Motion to Dismiss for Violation of Defendant's Due Process Rights." Westerman argues that he suffered substantial prejudice to his right to a fair trial because of the State's pre-indictment delay. Specifically, he argues that because of the delay, he was unable to obtain certain school records which might or might not have corroborated one of the incidents alleged by the complaining witness. Moreover, Westerman argues that there was no good reason for the delay.

A trial court's decision denying a defendant's motion to dismiss for pre-indictment delay is reviewed de novo. Faufata, 101 Hawai'i at 265, 66 P.3d at 794. Review of a constitutional due process claim of prejudice engendered by pre-indictment delay involves a weighing of the substantial prejudice to the defendant's right to a fair trial against the reasons for the delay. State v. Crail, 97 Hawai'i 170, 178, 35 P.3d 197, 205 (2001) (citations omitted).

The complaining witness attended Kekaha Elementary School during the time period pertaining to one of the incidents of sexual assault. She testified that one day at school, her class was playing a game during which all the students fell down. The way she landed, her "hand fell on another boy's private part." She testified that later that day, Westerman picked her up from school and was aware and angry about the incident. Once at home, she testified, Westerman sexually assaulted her. Westerman contends that school records of the incident might or might not have corroborated this incident of sexual assault.

11

According to the Indictment, each incident of sexual assault in this case occurred between June 15, 1995 and May 31, 1997. The complaining witness initially reported the incidents to the KPD on May 30, 2005, roughly eight years after the last incident of sexual assault took place. The KPD did not conduct a formal interview of the complaining witness until March, 2007, nearly two years after the initial reporting. Following this interview, the KPD did not complete its investigation until May, 2010, more than three years after the formal interview. Westerman was indicted on October 25, 2012, more than seven years after the sexual assaults were first reported to the KPD, and more than fifteen years after the last sexual assault occurred.

According to the complaining witness, there was no other reason that she knew of that caused the delay, other than herself "being emotionally unable to step into the courtroom and testify[.]" According to KPD Lieutenant Todd Tanaka, he "wanted to give her time. . . . To see if she could recall." He explained, "it's not our practice to go ahead and push or rush the child. You know, we wait until that -- until they're ready to talk and, you know, this case, it's -- you know, it's complex. And it's very private[.]"

The Circuit Court found that Westerman failed to show that he was prejudiced by the pre-indictment delay. First, the court found that the statute of limitations was not violated. HRS §§ 701-108(2)(b) & (6)(c) (Supp. 1995, 2014) provide that the State had six years from the complaining witness' eighteenth birthday to file the charges. The Indictment was filed in 2012, within the time period allowed. Second, the Circuit Court found:

> [a]nd in this case, the Court doesn't find that there was any undue pressure [sic] by the delay. . . . There was an incident with the school where there's no evidence that any records were kept. And so there are no records that were destroyed because of the delay. And so the Court will be denying the motion to dismiss.

(Emphasis added).[7] Indeed, Westerman has produced no evidence that records which could have potentially assisted him were destroyed between May, 2005, when the sexual assaults were reported to KPD, and October, 2012, when the State obtained the Indictment. Given the reasons for delay and the Circuit Court's finding that no school records were destroyed because of the delay, the Circuit Court did not err in refusing to grant Westerman's "Motion to Dismiss for Violation of Defendant's Due Process Rights."

**D. Ineffective assistance of counsel**

Westerman contends in his final point of error that the Circuit Court erred in denying his "Motion for New Trial" on grounds of ineffective assistance of counsel.[8] Westerman argues that trial counsel was ineffective for failure to call an expert witness during the second trial.[9]

In his "Motion for New Trial," filed January 25, 2016, Westerman was still represented by his trial counsel and listed ineffective assistance of counsel as one of four claims supporting a new trial. At the February 25, 2016 hearing on

---

[7] The Circuit Court also found:

> Mr. Ogata, who was the restaurant owner didn't keep any records, didn't do a very good job of keeping records. And so there were no records available for Mr. Westerman. I believe he testified that the work schedule was -- I don't want to say destroyed immediately, but I think he said he kept it about a week and then got rid of it.

This finding relates to an argument made in Westerman's "Motion to Dismiss for Violation of Defendant's Due Process Rights" regarding Westerman's inability to obtain potentially exculpatory employment records because of the State's pre-indictment delay. Westerman has not challenged this finding on appeal.

[8] It appears from the record that Westerman failed to serve his trial counsel with his appellate briefs. See Rule 28(a), Hawaiʻi Rules of Appellate Procedure ("If a brief raises ineffective assistance of counsel as a point of error, the appellant shall serve a copy of the brief on the attorney alleged to have been ineffective.").

[9] On April 28, 2016, at the conclusion of Westerman's sentencing, trial counsel moved to withdraw his representation of Westerman. On May 2, 2016, the Circuit Court issued its "Order Granting Oral Motion to Withdraw and Substitute Counsel," ordering the Office of the Public Defender to assume the role of substitute counsel. Due to a conflict in the Office of the Public Defender, Westerman's current counsel was later appointed by the trial court.

Westerman's Motion for New Trial, the Circuit Court asked, "[w]hat about D [(the argument regarding ineffective assistance of counsel)?]" Trial counsel responded, "[w]e're not proceeding on that. That was included in case he wanted to switch attorneys before today's hearing. We have no evidence to present with regard to that." However, because Westerman has new counsel on appeal, we will not deem his claim for ineffective assistance of counsel waived, as asserted by the State.

Westerman has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (quoting State v. Fukusaku, 85 Hawai'i 462, 480, 946 P.2d 32, 50 (1997)). No showing of "actual prejudice" to a defendant is required to prove ineffective assistance of counsel, because "[d]etermining whether a defense is 'potentially meritorious' requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker[.]" Richie, 88 Hawai'i at 39, 960 P.2d at 1247; Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994). In any claim of ineffective assistance of trial counsel, the burden is upon the defendant to demonstrate that, in light of all the circumstances, counsel's performance was not objectively reasonable – i.e., not "within the range of competence demanded of attorneys in criminal cases." Briones v. State, 74 Haw. 442, 462, 848 P.2d 966, 976 (1993) (quoting State v. Kahalewai, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972)).

As noted, Westerman was still represented by trial counsel with regard to the Motion for New Trial. Given the circumstances in this appeal, we conclude the current record is inadequate for us to conclusively decide Westerman's claim of ineffective assistance of counsel. Thus, Westerman may file a

14

petition pursuant to Rule 40 of the Hawaii Rules of Penal Procedure to raise his ineffective assistance of trial counsel claim.

### E. The State's points of error on cross-appeal

It is well established in Hawai'i that:

> a case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where events have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

Okada Trucking Co., Ltd. v. Bd. of Water Supply, 99 Hawai'i 191, 195-96, 53 P.3d 799, 803-04 (2002) (internal brackets ellipses, and quotation marks omitted) (citations omitted); Fukusaku, 85 Hawai'i at 490, 946 P.2d at 60 (holding that "[i]f the convictions are affirmed, the Prosecution will have received its requested remedy—conviction of the Defendant. Because there would no longer be an outstanding remedy, the entire cross-appeal would be moot.") (citation omitted). Accordingly, in light of the above rulings regarding Westerman's points of error on appeal, the issues raised in the State's cross-appeal are moot.

### IV. Conclusion

Based on the above, the "Judgment Guilty Conviction and Sentence," filed on May 3, 2016 by the Circuit Court of the Fifth Circuit is affirmed, without prejudice to Westerman bringing a petition pursuant to Rule 40 of the Hawaii Rules of Penal Procedure to raise his ineffective assistance of trial counsel claim asserted in this appeal.

DATED: Honolulu, Hawai'i, March 18, 2019.

Tracy Murakami,
Deputy Prosecuting Attorney,
for Plaintiff-Appellee/
Cross-Appellant.

Rosa Flores,
for Defendant-Appellant/
Cross-Appellee.

Chief Judge

Associate Judge

Associate Judge